## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANGEL JACQUEZ, ADMINISTRATOR TO THE ESTATE OF JOHNATHAN BENJAMIN-ADAMS (DECEASED)<br>*Plaintiff*,<br><br>v.<br><br>STEVEN HOLMES AND DENISE HOLMES<br><br>*Defendants*. | No. 3:20-CV-01604 (MPS) |

### RULING ON MOTION TO DISMISS

Plaintiff Angel Jacquez, foster parent and administrator to the estate of Johnathan Benjamin-Adams ("Johnny"), brings this action against Defendants Steven and Denise Holmes, relatives of Plaintiff's wife, alleging that Defendants' negligence resulted in Johnny's death. ECF No. 1 at 3.  Johnny, fourteen years old when he died and a resident of West Hartford, Connecticut, had been sent by Plaintiff to live with Defendants in West Virginia, where he was allegedly attacked and killed by one of Defendants' children. *Id.* at 2-3.  Defendants move to dismiss Plaintiff's Complaint for lack of personal jurisdiction. ECF No. 12.  For the reasons set forth below, Plaintiff has failed to satisfy Connecticut's long-arm statute.  Nevertheless, I exercise my discretion to transfer this case to the Northern District of West Virginia under 28 U.S.C. § 1406(a).

## I.      BACKGROUND

The following facts are drawn from the complaint, the Defendants' affidavits, and other submissions on the motion to dismiss, which may be considered at this stage in determining whether personal jurisdiction exists. *See infra* Part IIa.

Johnny, a minor, lived with Plaintiff and his wife, Janice, in West Hartford, Connecticut. He began living with them from the ages of two until six years old, and was then placed in

1

Plaintiff's foster care by the Department of Children and Families on April 8, 2016. ECF No. 1 at ¶ 6.  Plaintiff and Janice intended to formally adopt Johnny, and he remained under their care—involved in sports and community activities. *Id*. ¶¶ 6, 12.  In early 2020, when COVID-19 cases were steadily rising in Connecticut, Plaintiff and Janice decided to send Johnny to live temporarily with Defendants, relatives of Janice, on their multi-acre farm in West Virginia. ECF No 1. at ¶¶ 14-18. At that time, there were zero reported positive cases of COVID-19 in the State of West Virginia. *Id.* at ¶ 17. While residing with Defendants, Johnny continued to take classes remotely and graduated from middle school. *Id.* at ¶ 19.

In July 2020, Johnny discovered that A.H., one of the Defendants' children, had been involved in a burglary. *Id*. at ¶ 20.  Johnny threatened to tell Defendants about A.H.'s illegal activity. *Id.*  "Thereafter, A.H. gained access to a firearm and chased Johnny out of the house. A.H. caught up to Johnny and brutally beat him. Finally, and most tragically, A.H. killed Johnny with a single gunshot wound to the head." *Id.* at ¶ 21.  After Johnny's death, Plaintiff was appointed administrator of Johnny's estate and brought this negligence action claiming that Defendants had a duty of care to keep Johnny safe, breached that duty by failing to monitor and supervise their son A.H., and directly and proximately caused Johnny's injuries and death. *Id.* at ¶¶ 22, 26, 28, 32.

Defendants have filed a motion to dismiss the entire complaint under Fed. R. Civ. P. 12(b)(2), asserting that all of Plaintiff's allegations concern conduct that took place in West Virginia, that Defendants have no connection to Connecticut, and, consequently, there is no basis for this Court to assert personal jurisdiction over them. ECF No. 12-1 at 2.  Defendants have submitted affidavits in support of the motion stating that they: (1) "do not live in and have never lived in Connecticut;" (2) live and maintain their residence in Augusta, West Virginia; (3) "do

not own any property in Connecticut;" (4) "do not transact business in Connecticut;" and (5) "do not solicit business, or engage in any other persistent course of conduct, or derive any revenue from goods used or consumed or services rendered, in Connecticut." ECF Nos. 15-16.

## II.     DISCUSSION

### a.     Legal Standard

The party asserting jurisdiction, Plaintiff in this case, bears the burden of showing that the court has jurisdiction over the defendant when a motion to dismiss is brought under Rule 12(b)(2). *Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2001).  "[T]he nature of the plaintiff's obligation varies depending on the procedural posture of the litigation. Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith … legally sufficient allegations of jurisdiction." *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990), *cert. denied*,  498 U.S. 854 (1990), "i.e., by making a prima facie showing of jurisdiction." *Whitaker*, 261 F.3d at 208 (citation and internal quotation marks omitted).  Plaintiff's jurisdictional allegations are to be construed liberally and any uncontroverted factually allegations are to be taken as true. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).  Argumentative inferences, however, will not be drawn in Plaintiff's favor. *Id.*

### b.     Personal Jurisdiction Analysis

Determining a court's authority to exercise personal jurisdiction over a defendant involves a two-step analysis.  First, the court must determine whether exercising jurisdiction is consistent with the long-arm statute of the state in which the court sits, Connecticut in this case. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2008).  If the state's long-arm statute does not allow the court to exercise personal jurisdiction, then the movant prevails.  If the state statute is satisfied, the analysis proceeds to the second step, at which the court must

3

determine whether the exercise of jurisdiction comports with the Fourteenth Amendment's Due

Process Clause. *Id.* at 164.  Under the Due Process Clause, a court may exercise personal

jurisdiction over a defendant only if the defendant has enough contacts with the forum state that

exercising jurisdiction over the defendant does not "offend traditional notions of fair play and

substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and

quotation marks omitted).

Plaintiff asserts that this Court has personal jurisdiction over Defendants under subsection

(3) of Connecticut's long-arm statute. ECF No. 18 at 3.[1]  The statute provides, in relevant part:

> [A]  court may exercise personal jurisdiction over any nonresident individual … who
> in person or through an agent: … (3) commits a tortious act outside the state causing
> injury to person or property within the state … if such person or agent (A) regularly
> does or solicits business, or engages in any other persistent course of conduct, or
> derives substantial revenue from goods used or consumed or services rendered, in the
> state, or (B) expects or should reasonably expect the act to have consequences in the
> state and derives substantial revenue from interstate or international commerce….

Conn. Gen Stat. § 52–59b(a)

When I construe Plaintiff's allegations liberally and accept all uncontested

allegations as true, Plaintiff has failed to make a *prima facie* showing that Defendants are

subject to jurisdiction under Conn. Gen Stat. § 52–59b(a)(3).  First, Plaintiff has failed to

allege any injury to person or property within Connecticut.  "To determine whether a

tortious act causes injury inside the state, courts generally apply a situs-of-injury test,

which asks them to locate the original event which caused the injury." *Statek Corp. v.*

*Coudert Bros. LLP*, No. 3:07-cv-00456 (SRU), 2018 WL 834227, at *16 (D. Conn. Feb.

12, 2018) (citation and quotation marks omitted).  There can be no doubt that the situs of

the injury in this case is West Virginia.  Not only did the event which caused Johnny's

---

[1] Plaintiff does not assert jurisdiction under any other section of Connecticut's long-arm statute, so this ruling is
confined to subsection (3).

death occur in West Virginia, but essentially all of Plaintiff's allegations relate to conduct occurring in West Virginia. Johnny was residing in West Virginia, the Defendants allegedly were negligent in West Virginia when they failed to supervised their son A.H., and ultimately, A.H. allegedly "brutally beat" and "killed Johnny with a single gunshot wound to the head[]" in West Virginia. ECF No. 1 ¶¶ 18, 21, 28

Plaintiff's argument that Johnny was "a resident of the State of Connecticut … never abandoned his Connecticut residency[,]" and "was only temporarily residing" in West Virginia due to the pandemic does not repair the jurisdictional defect. ECF No. 18 at 3. The focus of the analysis for personal jurisdiction is not on the plaintiff's residence, but on where the tortious conduct occurred. *See Robb v. Robb*, 620 F. Supp. 2d 282, 287 (D. Conn. 2009) (explaining that when the tortious conduct occurs outside the state, and there are no additional circumstances that warrant exercising jurisdiction, Connecticut lacks personal jurisdiction, even if there are latent injuries that are not discovered until the plaintiff is within Connecticut); *see also Evergreen Media Holdings, LLC v. Warren*, 105 F. Supp. 3d 192, 199–200 (D. Conn. 2015) ("As to the in-state injury, the situs of a commercial injury is generally where the plaintiff experiences a loss of business, not where the plaintiff resides, despite the fact that the plaintiff may, while in his home state, subsequently feel the economic impact of the lost business.") (citation omitted). Under Plaintiff's theory of jurisdiction, a Connecticut resident who gets rear-ended while driving in Ohio could return to Connecticut and haul the Ohio resident into Connecticut court, simply because plaintiff is a Connecticut resident, even though all of the events occurred in Ohio. Connecticut's long-arm statute does not support such a result. Instead, the statute requires that there be some injury to person or property within Connecticut.

Plaintiff's only allegation of injury to person or property in Connecticut is an injury to the State of Connecticut "vis-a-vis its filing of a Department of Administrative Services lien against the Probate Estate." ECF No. 18 at 3. Plaintiff does not support this position with citations to any authority, and does not explain the nature of the injury to the State. *Id.* Apparently, Plaintiff is suggesting that the State has suffered or will suffer some injury because Johnny was a ward of the state, not yet adopted by Plaintiff and still under the care and control of the foster system at the time of his death. Even if Johnny's death has caused the State to suffer some injury, that injury would be secondary and only felt by the State as a result of the original event that occurred in West Virginia – Johnny's death; secondary resultant injuries are insufficient to establish personal jurisdiction under Connecticut's long-arm statute. *LaPrade v. Peyton,* No. 3:13-CV-01005 (MPS), 2014 WL 2871584, at *2 (concluding injury "within the state" requirement was not met because, regardless of where "resultant damages [were] felt by the plaintiff," a Connecticut resident, the car accident-causing injury took place in Maryland). Connecticut may have a connection to Johnny, but Plaintiff's negligence claim "has nothing to do with anything that occurred or had its principal impact in Connecticut." *Statek Corp.*, 2018 WL 834227, at *16.

Moreover, neither the complaint nor the brief make any allegations that address the second part of subsection (3). In addition to injury in Connecticut, subsection (3) requires either a showing that Defendants "regularly do[ ] or solicit[ ] business, or engage[ ] in any other persistent course of conduct, or derive[ ] substantial revenue from goods used or consumed or services rendered, in the state", Conn. Gen. Stat. § 52–59b(a)(3)(A), or that Defendants expected or should have expected their actions or inaction to have consequences in Connecticut, *and* derived substantial revenues from interstate or

international commerce. Conn. Gen. Stat. § 52–59b(a)(3)(B).  Plaintiff has not satisfied

either requirement.  In fact, Plaintiff has failed to even address that portion of the statute.

*See Liebert v. Jones*, No. 3:20-cv-00970 (VLB), 2020 WL 7645432, at *8, *10 (D. Conn.

Dec. 23, 2020) (concluding that Plaintiffs failed to establish personal jurisdiction under

Connecticut's long-arm statute or due process and noting that "Plaintiffs fail[ed] to even

address the second part of that subsection….").

Defendants affidavits make clear that they have no commercial transactions or

other interactions that involve Connecticut.  Defendants state that they neither transact nor

solicit business in Connecticut, or engage in any other persistent course of conduct or

derive any revenue from goods used or consumed or services rendered in Connecticut.

ECF Nos. 15, 16; *See Shaughnessy v. Southern*, No. 3:18-cv-939 (MPS), 2019 WL

1922292, at *5–6 (D. Conn. Apr. 30, 2019) (Affidavits supported dismissing a Connecticut

citizen's claims against a doctor, a citizen of Minnesota who performed surgery on plaintiff

in Shanghai, China, for failure to establish personal jurisdiction because the plaintiff failed

to satisfy the elements of Conn. Gen. Stat. § 52–59b(a)(3), or any other provisions under

Connecticut's long-arm statute).  Plaintiff has offered nothing to controvert Defendants'

evidence.

Regarding the subsection (B) of the statute, which requires an expectation that

actions will have consequences in Connecticut *and* that substantial revenues are derived

from interstate or international commerce, Plaintiff similarly has failed to show how

Defendants fall within the requirements. Conn. Gen. Stat. § 52–59b(a)(3)(B).  It is

conceivable that Defendants expected or should have expected their actions to have

consequences in Connecticut because, according to the complaint, Johnny was residing in

West Virginia only temporarily due to the pandemic and his foster parents who intended to adopt him remained in Connecticut. ECF No. 1 ¶¶ 11, 18.  There are no allegations, however, that Defendants derived any revenues, much less substantial revenues, from interstate or international commerce.  Plaintiff has thus failed to make a *prima facie* showing that he has met the requirements of Conn. Gen. Stat. § 52–59b(a)(3).  In light of this conclusion, it is unnecessary to proceed to the due process step of the personal jurisdiction analysis.

**c.      Transfer of Venue**

Plaintiff asserts that rather than dismissing the claims, the case should be transferred pursuant to 28 U.S.C. § 1406.[2]  "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993). "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." *Daniel v. Am. Bd. of Emergency Med*., 428 F.3d 408, 435–36 (2d Cir. 2005) (citation omitted).  Defendants do not object to transferring the case. ECF No. 19 at 8.  I therefore exercise my discretion to transfer this case to the Northern District of West Virginia.

**III.      CONCLUSION**

For the foregoing reasons, the Court TRANSFERS this action to the Northern District of West Virginia.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut

---

[2] Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

9

April 26, 2021